UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

v.

HARBINGER CAPITAL PARTNERS OFFSHORE
MANAGER, L.L.C., *et al.*,

                Defendants.

ECF Case

No. 12-CV-5027 (PAC)

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

Defendants Harbinger Capital Partners Offshore Manager, L.L.C. ("Offshore Manager"), Harbinger Capital Partners Special Situations GP, L.L.C. ("Special Situations") and Philip A. Falcone ("Falcone") respectfully submit this supplemental memorandum of law in further support of their motion to dismiss the complaint (the "Complaint" or "Compl.") of Plaintiff Securities and Exchange Commission (the "SEC") pursuant to Rule 12(b)(6).

I.   **PLAINTIFF FAILED TO IDENTIFY ANY MANIPULATIVE CONDUCT**

Plaintiff's answers to this Court's questions at oral argument confirm that Plaintiff has failed to state a claim for market manipulation. Plaintiff was forced to admit that the acts alleged here—buying more than 100% of the bonds and refusing to lend the bonds to short sellers—are lawful, both by themselves and in combination:

> THE COURT: Given the way the market operates there is nothing wrong with buying more than the market has, right?
>
> MR. GOTTESMAN: In this particular situation with corporate bonds where there is no cover requirement, right, that can happen.
>
> THE COURT: So, that step is all right. You can go long and you can go long more than the market has.
>
> MR. GOTTESMAN: *Yes*. I believe so.
>
> THE COURT: Okay.
>
> MR. GOTTESMAN: Right. What is important in this case—
>
> THE COURT: Where do we get off the tracks now?
>
> MR. GOTTESMAN: It is the combination of events and the non-disclosure of what was going on. You have to look at the combination of events; acquiring more than a hundred percent.
>
> THE COURT: Okay. You can do that, right?
>
> MR. GOTTESMAN: You can do that. Making them unavailable by locking them up in a bank and then also --
>
> THE COURT: Making them unavailable. You mean you can be long and you have to sell because you're long?
>
> MR. GOTTESMAN: *No, you don't have to sell because you're long*.

> THE COURT: Where is the requirement that you have to sell?
>
> MR. GOTTESMAN: *You don't have to sell*.

Dkt. No. 34 at 20:20 – 21:21.[1] Thus, the conduct alleged here is admittedly lawful.

In an attempt to salvage its Complaint, Plaintiff insisted that "it is the combination of these things *combined with the non-disclosure of them*" that transforms Defendants' lawful acts into unlawful market manipulation.[2] But Plaintiff could not provide any support for its bald and circular assertion that Defendants' failure to disclose their admittedly lawful conduct makes that same conduct unlawfully manipulative, and its assertion defies logic. To be actionable, manipulative conduct must be "inherently deceptive when performed." *SEC v. Kelly*, 817 F. Supp. 2d 840, 844 (S.D.N.Y. 2011). As Plaintiff conceded, buying more than 100% of a security is not inherently deceptive. Dkt. No. 34 at 20:20 - 21:2. Naked short sellers—the only alleged intended victims here—are not entitled to assume that long-side investors will not buy more than 100% of a security's float. *Id.* Similarly, and as Defendants have noted without opposition, long-side investors are not entitled to assume that short sellers will not sell short more than 100% of a security's float. *See Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 863 (7th Cir. 1995) (holding that selling short more than 100% of a security's float without disclosing that fact is not manipulative conduct, and stating that "plaintiffs were not entitled to assume that [short sellers] would not sell more shares than were outstanding").

---

[1] All emphasis in quotations was added by Defendants.

[2] Plaintiff also stated at oral argument that Defendants were alleged to have "exercised reverse repo transactions to take any other bonds that were in the marketplace out of circulation." Dkt. No. 34 at 22:11-13. But reverse repurchase or "repo" transactions are merely one of the transactions by which Defendants purchased more than 100% of the bonds' float. Compl. ¶ 58; *see also Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 298 (S.D.N.Y. 1998) ("In a reverse repurchase agreement, the party initially buys the securities in exchange for cash, and incurs a forward obligation to resell them . . . Their purchase-and-sale form reflects a value-for-value exchange designed as such for use explicitly in [the capital] markets."). The alleged "reverse repo transactions" are therefore part of the admittedly lawful acts of acquiring more than 100% of the bonds' float and refusing to lend the bonds to short sellers. *Id.*

That being the case, why should naked short sellers be entitled to assume that long-side investors who own more than 100% of a security *will necessarily lend their securities to short sellers*? Long-side investors hope that prices go up, not down. So it is hardly surprising, much less inherently deceptive, that a long-side investor who owns all of a bond's float would exercise its lawful right not to lend its bonds to naked short sellers, who are themselves trying to drive the bonds' price down by selling bonds that do not exist.[3] Plaintiff failed to establish that engaging in the conduct alleged here without simultaneously disclosing it to naked short sellers is inherently deceptive, and its Complaint should be dismissed for that reason alone.

II. **PLAINTIFF FAILED TO IDENTIFY ANY DUTY DEFENDANTS HAD TO DISCLOSE THE SIZE OF THEIR HOLDINGS OR THEIR DECISION TO EXERCISE THEIR RIGHT NOT TO LEND THEIR BONDS TO SHORT SELLERS**

In the same vein, Plaintiff failed to identify any duty Defendants had to disclose either the size of their investors' holdings in the bonds or their decision to exercise their admittedly lawful right not to lend their investors' bonds to Goldman's naked short sellers. When questioned by this Court, Plaintiff stated that "[t]here were two failures to disclose here. One, the failure to disclose the overall scheme." Dkt. No. 34 at 32:1-2. And "second are the specific misleading omissions," which occurred "when the defendant went out and made demands upon the shorts that they covered their short positions, they should have disclosed, to be honest with the shorts, that the defendants held all the bonds and the shorts wouldn't be able to cover them to cover the short positions without buying at the defendant's high prices." *Id.* at 33:12 – 34:3.

Plaintiff, however, could not identify any *duty* making these two alleged failures to disclose unlawful. When pressed by the Court, Plaintiff acknowledged that the information Defendants

---

[3] As Defendants noted in their reply memorandum, Congress even recently enacted a law requiring that "[e]very registered broker or dealer [*e.g.*, Goldman] shall provide notice to its customers *that they may elect not to allow their fully paid securities to be used in connection with short sales*." 15 U.S.C.A. § 78o(e).

allegedly failed to disclose to the short sellers consisted entirely of Defendants' performance of admittedly lawful acts:

> THE COURT: What are the facts that should have been disclosed?
>
> MR. GOTTESMAN: They should have disclosed we hold more than a hundred percent of these. We are not allowing them to be borrowed by anybody, the only way to get these is by buying them directly from us. The prices we're demanding have no relationship to the economics at all, we're just setting as high a price as we can possibly set, and --
>
> THE COURT: And each one of those steps, now, we have agreed, are lawful in themselves? A holder of a product of a stock can say I want a hundred for it. You can say it is not worth a hundred. That's my price; if you want it, you have to give me a hundred.
>
> MR. GOTTESMAN: *Yes. I would say that's correct*, each of those things standing in isolation, but the law has a lot of things in which isolated acts, standing by themselves maybe are okay, but when you put them together, maybe they're not, because all together they form a scheme and a plan and something that is deceptive and that's what we have here.

*Id.* at 32:16 – 33:9. As the Court observed, Plaintiff's claims amount to an alleged failure by Defendants to disclose to Goldman's naked short sellers that Defendants were "sticking it" to them:

> THE COURT: They had an obligation to say I'm sticking you?
>
> MR. GOTTESMAN: *Pretty much*. They had an obligation to say these prices are things we're unilaterally setting because we can. You can't get these anywhere else, we have made sure of that, and we're going to stick it to you and we're going to demand these prices.

*Id.* at 34:9-15.

Plaintiff's circular contention that Defendants had a duty to disclose their admittedly lawful conduct because not disclosing it makes it unlawful is contrary to well established precedent. Defendants had no duty to disclose the size of their holdings, their decision not to lend their investors' bonds to short sellers, or the pejorative notion that they were "sticking it" to Goldman. As this Court has put it, "the federal securities laws do not require a company to accuse itself of wrongdoing." *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004), *aff'd sub nom. Albert Fadem Trust v. Citigroup, Inc.*, 165 F. App'x 928 (2d Cir. 2006); *see also Ballon v.*

*Wilfred Am. Educ. Corp.*, 720 F. Supp. 241, 249 (E.D.N.Y. 1989) (securities laws do not require corporate management "to direct conclusory accusations at itself or to characterize its behavior in a pejorative manner"); *SEC v. St. Anselm Expl. Co.*, __ F. Supp. 2d __, 2013 WL 1313765, at *15 (D. Colo. Mar. 29, 2013) (**granting defendants' motion for judgment as matter of law in fraud and market manipulation action by SEC, holding that the SEC failed to identify any duty to disclose allegedly omitted information, and holding that "[t]he securities laws do not create an affirmative duty to disclose any and all material information"**). Plaintiff failed to identify any authority supporting the creation of the new duty to naked short sellers that it is asking the Court to create here, and its Complaint should be dismissed for this second independent reason.

### III. PLAINTIFF FAILED TO IDENTIFY ANY FACTUAL ALLEGATIONS ESTABLISHING THE PLAUSIBILITY OF THE ALLEGED SCHEME

Plaintiff's pre-motion conference letter establishes that when Plaintiff drafted and filed its Complaint, Plaintiff mistakenly believed it was not required to set forth plausible factual allegations to support its claims. *See* Plaintiff's Pre-Motion Conference Letter at 3 (stating that "Defendants Cannot Base a Rule 12(b)(6) Motion on…Whether The Complaint's Allegations Are 'Plausible'"). Although Plaintiff has since acknowledged that is not the law,[4] Plaintiff has failed to identify any factual allegations in its pleading that establish the plausibility of the "short squeeze" scheme alleged here—a scheme in which prices were to be manipulated by "*forcing* settlement from short sellers at . . . arbitrary and inflated prices." Compl. ¶ 1.

Plaintiff was unable at oral argument to identify any factual allegations in its Complaint establishing that Defendants possibly could have forced any naked short seller to do anything. Plaintiff attempted to establish the plausibility of its allegations by stating that Defendants sold some of the bonds at prices "as high as $95 on July 30, 2007." Dkt. No. 34 at 31:1-2. But that

---

[4] *See, e.g.*, Plaintiff's Opposition Brief (Dkt. No. 25) at 14 (acknowledging that Plaintiff's claims must be "plausible").

single sale admittedly was an *open market* transaction.  Compl. ¶ 76.  Defendants did not communicate with that buyer at all, much less force it to do anything.  *Id.*

Nor could Plaintiff explain, either in its opposition brief (Dkt. No. 25) or during oral argument, how Defendants' alleged scheme of "forcing settlement from short sellers at . . . arbitrary and inflated prices" can be squared with its own allegation that the FINRA Rule requires that short sellers' failures to deliver securities be resolved "at an economically defensible price"—which is what Plaintiff acknowledges *in fact happened here* when Defendants and Goldman ultimately resolved their differences by agreement.  Compl. ¶¶ 1, 63, 74, 85; *see also* Dkt. No. 34 at 16:16-24, 30:10-31:1.  Plaintiff's own allegations about the FINRA Rule demonstrate that the scheme alleged here is implausible.  And the Complaint should be dismissed for this third independent reason.

## IV. CONCLUSION

While Goldman's naked short sellers may have been frustrated by Defendants' refusal to lend them their bonds,[5] Goldman was hardly the victim of a market manipulation.  Defendants' purchase of more than 100% of the bonds was lawful (and, indeed, was possible only because of Goldman's decision to engage in naked short selling); Defendants' decision to refuse to lend their bonds to short sellers was lawful; and the combination of those two things is not only not deceptive, it is *logical*, given the obviously adverse interests of long and short investors.  Plaintiff's overreaching claims, which would impose an entirely new duty on investors to disclose to naked short sellers the size of their holdings and their willingness to lend their securities, should be dismissed.

---

[5] Plaintiff emphasized at oral argument not only that Goldman was the only alleged intended victim here but that "what the defendants were trying to do here, in part, was to get even, to act out on their anger against Goldman for having short positions that they were not covering." Dkt. No. 34 at 29:19-22.

Dated: New York, New York
August 2, 2013

        **THE DONTZIN LAW FIRM LLP**

*/s/ Matthew S. Dontzin*
Matthew S. Dontzin
Tibor L. Nagy, Jr.
David A. Fleissig
6 East 81st Street
New York, New York 10028
Tel: (212) 717-2900
Fax: (212) 717-8088
msdontzin@dontzinfirm.com
tlnagy@dontzinfirm.com
dafleissig@dontzinfirm.com

*Attorneys for Defendant Philip A. Falcone*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Leslie Gordon Fagen
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 373-3000
Fax: (212) 757-3990
lfagen@paulweiss.com

*Attorneys for Defendants Harbinger Capital Partners Offshore Manager, L.L.C. and Harbinger Capital Partners Special Situations GP, L.L.C.*